IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Cr. No. 96-01018HG-01 |
|  | Cv. No. 12-00627HG-KSC |
| Plaintiff/Respondent, |  |
| vs. |  |
| SCOTT ROBINSON, |  |
| Defendant/Petitioner. |  |

**ORDER GRANTING PETITIONER SCOTT ROBINSON'S REQUEST FOR LIBERAL
CONSTRUCTION
(ECF NO. 238)
AND
DENYING PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY
(ECF NO. 213)
AND
DENYING PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
GOVERNMENT'S DUTY OF CANDOR AND REQUEST FOR EVIDENTIARY HEARING
(ECF NO. 243)
AND
DENYING PETITIONER'S MOTION TO COMPEL GOVERNMENT TO CORRECT
RECORD (ECF NO. 246)
AND
DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL
(ECF NO. 242)
AND
DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255
(ECF NO. 184)**

On November 19, 2012, Defendant/Petitioner Scott Robinson

filed a Motion to Vacate, Set Aside or Correct Sentence (ECF No.

184), pursuant to 28 U.S.C. § 2255. Petitioner challenges his

1

sentence of 262 months imprisonment, which was imposed on October 24, 1997.

Petitioner challenges the inclusion of 609.5 grams of methamphetamine in the evidence produced against him at Trial. Petitioner raised the same argument prior to Trial in his Motion to Suppress and his Motion to Dismiss. Both Motions were the subject of an evidentiary hearing. The Motions were denied in a written Order.

Petitioner now claims that the 609.5 grams of methamphetamine came into the case because of false representation by a Drug Enforcement Administration ("DEA") Agent. Petitioner claims that the Government failed to disclose the DEA Agent's alleged history of misconduct.

Petitioner's Motion to Vacate lacks merit. The DEA Agent was not involved in the recovery, chain of custody, or analysis of the drug quantity contested by Petitioner. Proof of the drug quantity was established, at Trial, through the testimony of a Honolulu Police Department ("HPD") Evidence Specialist, who collected the substance, and an HPD Criminalist, who tested it. The Court did not rely on any representation by the DEA Agent regarding the drug quantity.

Petitioner also fails to point to any evidence the Government was obligated to disclose concerning misconduct by the DEA Agent. The DEA Agent's alleged malfeasance occurred

2

approximately ten years after Petitioner's Trial. The actions alleged were addressed in the case of <u>United States v. Ferreira</u>, 2011 U.S. Dist. LEXIS 138031 (D. Haw. 2011).

The Court lacks jurisdiction over Petitioner's Motion to Vacate, as it is a successive Section 2255 Motion filed without certification from the Ninth Circuit Court of Appeals.

Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 184) is **DENIED**.

<u>**BACKGROUND**</u>

On October 9, 1996, a four-count Indictment was filed, charging Petitioner Scott Robinson, with: Count 1: Manufacturing methamphetamine, in violation of 21 U.S.C. § 856(a)(1); Count 2: Endangering life by manufacturing a controlled substance, in violation of 21 U.S.C. § 858; Count 3: Possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii); and Count 4: Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 13.)

On January 29, 1997, a Superseding Indictment was filed, amending Count 3 to charge an increased drug quantity, in violation of 21 U.S.C. § 841(b)(1)(A)(viii), instead of 21 U.S.C.

§ 841(b)(1)(B)(viii). The other charges remained the same.
(Gov't's Resp. Ex. 1, ECF No. 226.)

On April 1, 1997, Petitioner's Jury Trial commenced. (ECF
No. 95.)

On April 9, 1997, the Jury returned a guilty verdict on all
four counts of the Superseding Indictment. (ECF No. 104.)

On October 24, 1997, Petitioner's Sentencing Hearing was
held. The Court adopted the findings and sentencing guideline
calculation in the Presentence Report. Petitioner's imprisonment
range was calculated to be 262 to 327 months, based on a total
offense level of 37 and criminal history category of 3.
Petitioner was sentenced to 240 months imprisonment as to Count
1; 120 months as to Counts 2 and 4, and 262 months as to Count 3,
with all terms to run concurrently. (ECF No. 127.) The Judgment
was docketed on October 29, 1997. (ECF No. 129.)

On October 31, 1997, Petitioner filed an Appeal. (ECF No.
130.)

On November 23, 1998, the Ninth Circuit Court of Appeals
affirmed Petitioner's conviction. 165 F.3d 920 (9th Cir. 1998).

On October 15, 1999, Petitioner filed, in the District
Court, a Motion for New Trial based on newly discovered evidence.
(ECF No. 142.)

4

On November 12, 1999, Petitioner filed his initial Motion to Vacate, pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel. (ECF No. 145.)

On October 11, 2000, the District Court denied both the Motion for New Trial and the Section 2255 Motion. (ECF No. 155.)

On October 25, 2000, Petitioner appealed the denial of his Motion for New Trial. (ECF No. 156.)

On November 8, 2000, Petitioner filed, in the District Court, a Motion for Reconsideration of the denial of his Section 2255 Motion. (ECF No. 157.)

On February 26, 2001, the District Court denied the Motion for Reconsideration of the denial of Petitioner's Section 2255 Motion. (ECF No. 165.)

On March 8, 2001, Petitioner filed, in the District Court, a Notice of Appeal of the denial of his Motion for Reconsideration of his Section 2255 Motion. (ECF No. 168.) The District Court construed the Notice as a request for a Certificate of Appealability, pursuant to 28 U.S.C. § 2253(c). The District Court denied the request on July 30, 2001. (ECF No. 173.)

On June 29, 2001, Petitioner filed, in the Ninth Circuit Court of Appeals, an Application for leave to file a successive Section 2255 Motion. The Appellate Court denied Petitioner's Application on November 8, 2001. (9th Cir. Case No. 01-71092.)

On August 15, 2001, Petitioner filed, in the Ninth Circuit Court of Appeals, a request for a Certificate of Appealability as to the denial of the Motion for Reconsideration of his initial Section 2255 Motion. The Appellate Court denied the request on February 20, 2002. (9th Cir. Case No. 01-16604.)

On September 19, 2001, the Ninth Circuit Court of Appeals affirmed the District Court's denial of Petitioner's New Trial Motion. (ECF No. 174.)

On November 19, 2012, over ten years after Petitioner's initial Section 2255 Motion was denied, Petitioner filed the Section 2255 Motion presently before the Court. (ECF No. 184.)

On March 4, 2013, Petitioner filed a Memorandum and Affidavit in support of the Section 2255 Motion. (ECF Nos. 198 and 199.)

On March 14, 2013, Petitioner filed a Motion for an Evidentiary Hearing. (ECF No. 201.) The Court ordered that, upon receipt of the Pleadings, it would set an evidentiary hearing, if appropriate. (ECF No. 202.)

On May 6, 2013, four days before the Government's deadline for filing its Response, Petitioner moved to Supplement his Section 2255 Motion with the declaration of another federal prisoner (ECF No. 208) and supporting exhibits (ECF No. 209). (ECF No. 206.)

On May 10, 2013, the Court issued a Minute Order, granting Petitioner's Motion to Supplement and extending the Government's time for filing a Response to Petitioner's Section 2255 Motion. (ECF No. 212.)

On May 17, 2013, Petitioner filed a Motion for Leave to Conduct Discovery in Support of his Section 2255 Motion. (ECF No. 213.)

On May 22, 2013, the Court ordered the Government to respond to the Motion for Leave to Conduct Discovery in its Opposition to Petitioner's Section 2255 Motion. (ECF No. 217.)

On June 10, 2013, Petitioner moved to submit, as additional authority, the case of Milke v. Ryan, 711 F.3d 988 (9th Cir. 2013. (ECF No. 222.) The Court granted the Motion on June 14, 2013. (ECF No. 224.)

On July 10, 2013, the Government filed a Response to Petitioner's Section 2255 Motion. (ECF No. 229.) The Government asserts that the Section 2255 Motion should be denied as it is a successive petition, filed without certification from the Ninth Circuit Appellate Court.

On October 2, 2013, Petitioner filed his Reply and a document entitled "Summary of the Relevant Factual Background." (ECF Nos. 235 and 237.)

On October 10, 2013, Petitioner filed a Motion for Appointment of Counsel. (ECF No. 242.)

On the same day, Petitioner filed a Motion requesting that the Court construe his Filings liberally, as he is proceeding pro se. (ECF No. 238.)

On October 21, 2013, Petitioner filed a Motion to Compel Compliance with the Government's Duty of Candor and Request for Evidentiary Hearing. (ECF No. 243.)

On October 28, 2013, Petitioner filed a Motion to Compel Government to Correct Record and Supporting Exhibits. (ECF Nos. 246 and 247.)

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner claims that the Court, in sentencing Petitioner based upon his possession of approximately 745 grams of methamphetamine, relied on the false representation of a Drug Enforcement Administration ("DEA") Agent. Petitioner alleges that the DEA Agent falsely increased the actual drug quantity by 609.5 grams, in order to coerce Petitioner into cooperating with the Government in an investigation. (Petitioner's Mem. Supp. Section 2255 Motion at pg. 2, ECF No. 198.)

Petitioner claims that the DEA Agent at issue has a pattern of misconduct and propensity to misrepresent evidence, which the Government failed to disclose.

Petitioner's Section 2255 Motion raises four grounds for relief:

Ground One: Petitioner claims that the Court relied on materially false information, provided by the DEA Agent, in including 609.5 grams of methamphetamine in Petitioner's base offense level calculation.

Grounds Two and Three: Petitioner claims that the Government violated Brady v. Maryland, 373 U.S. 83, 87 (1963), by failing to disclose to Petitioner information regarding the DEA Agent's alleged history of misconduct and fabrication of evidence.

Ground Four: Petitioner claims that the DEA Agent's alleged misrepresentation regarding the drug quantity deprived Petitioner of his right to effective representation during the plea bargaining process.

(Section 2255 Motion at pgs. 6-7, ECF No. 184; Mem. Supp. Section 2255 Motion at pgs. 41-51, ECF No. 198.)

Petitioner claims that the factual predicate for his claims emerged from the proceedings in United States v. Ferreira, 2011 U.S. Dist. LEXIS 138031 (D. Haw. 2011), in which a new trial was granted based upon the Government's failure to disclose evidence that was material to the same DEA Agent's credibility. (Mem. Supp. Section 2255 Motion at pg. 2, ECF No. 198.)

Petitioner requests that he be resentenced on the basis of a complete and accurate record or returned to the pretrial stage of the proceedings. (Section 2255 Motion at pg. 6, ECF No. 184.)

## DISCUSSION

I.  **PETITIONER IS NOT ENTITLED TO POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255**

A.  **PETITIONER'S Filings Shall be Construed Liberally**

Petitioner requests that the Court construe his Filings liberally, as he is proceeding pro se. (ECF No. 238.)

The Ninth Circuit Appellate Court has recognized that a pro se petitioner's filings should be construed liberally in a habeas proceeding. <u>Woods v. Carey</u>, 525 F.3d 886, 890 (9th Cir. 2008).

Petitioner's Request for Liberal Construction (ECF No. 238) is **GRANTED.**

B.  **Petitioner's Section 2255 Motion Lacks the Required Certification from the Ninth Circuit Court of Appeals**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, provides that a prisoner who wishes to file a second or successive habeas petition in the district must first move the appropriate court of appeals for an order authorizing

the district court to hear the successive petition. 28 U.S.C. §§

28 U.S.C. §§ 2244(b)(3)(A) and 2255(h). The Court of Appeals must

certify that the successive petition contains either:

> (1) newly discovered evidence that, if proven and
> viewed in light of the evidence as a whole, would be
> sufficient to establish by clear and convincing
> evidence that no reasonable factfinder would have found
> the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive
> to cases on collateral review by the Supreme Court,
> that was previously unavailable.

28 U.S.C. § 2255(h)("Gatekeeping Provisions").

A district court lacks jurisdiction over a successive

Section 2255 motion filed without certification from the

appropriate appellate court. United States v. Buenrostro, 638

F.3d 720, 723 (9th Cir. 2011).

Petitioner previously filed a Section 2255 Motion (ECF No.

145), which was denied on October 11, 2000. (ECF No. 155.)

Petitioner, in filing his second Section 2255 Motion, has not

presented the Court with certification from the Ninth Circuit

Court of Appeals.

Petitioner claims that his Section 2255 Motion does not

require certification from the Appellate Court, as it is based

upon deliberate government misconduct or deliberate-fabrication-

of-evidence in violation of Brady v. Maryland, 373 U.S. 83

(1963).[1] Petitioner claims that such claims are exempt from the AEDPA's Gatekeeping Provisions. (Section 2255 Motion at pg. 4, ECF No. 527; Consent to Enlargement of Time at pg. 5, ECF No. 218; Reply at pg. 2 ECF No. 235.)

Petitioner's theory is built upon his interpretation of Panetti v. Quarterman, 551 U.S. 930 (2007), and United States v. Lopez, 577 F.3d 1053 (9th Cir. 2009), *cert. denied*, 559 U.S. 984 (2010).

In Panetti, the Supreme Court held that a petitioner's Ford v. Wainwright, 477 U.S. 399 (1986), claim of incompetency to be executed, because of his mental condition at the time of the scheduled execution, is not subject to the AEDPA's Gatekeeping Provisions regarding second or successive habeas petitions. The Supreme Court explained that Ford-based competency claims do not become ripe until after the first habeas proceeding, and are not "second or successive." The Court, in exempting such claims from the AEDPA's Gatekeeping Provisions, in part, relied on the fact that second-in-time Ford claims were permitted under the pre-AEDPA abuse-of-the-writ doctrine.

In Lopez, the Ninth Circuit Appellate Court considered the possible impact of the Panetti decision on second-in-time Brady

---

[1]     In Brady v. Maryland, the Supreme Court held that the prosecution's suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, regardless of whether the prosecution acted in good or bad faith. Brady, 373 U.S. 83, 87 (1963).

claims. The Appellate Court determined that non-meritorious Brady claims are subject to the AEDPA's Gatekeeping Provisions, as such claims would have been barred as successive petitions under the pre-AEDPA abuse-of-the-writ doctrine.

The Appellate Court went on to discuss, in dicta, whether meritorious Brady claims, in which material evidence was newly disclosed to a petitioner, may be exempt from the AEDPA's Gatekeeping Provisions. The Appellate Court was concerned that it would lack jurisdiction over certain meritorious claims which were permitted under the pre-AEDPA abuse-of-the writ doctrine. Pursuant to the pre-AEDPA abuse-of-the-write doctrine, a second-in-time Brady claim based on newly discovered evidence was not considered successive if a prisoner established by a "reasonable probability" that, had the evidence been disclosed, the result of the proceeding would have been different. The AEDPA's Gatekeeping Provisions, in contrast, only permit Brady claims that establish by "clear and convincing" evidence that the failure to disclose impacted the finding of guilt. 28 U.S.C. § 2255(h)(1). The Appellate Court explained that a literal application of § 2255(h)(1) would bar federal jurisdiction over an entire subset of meritorious Brady claims: those where a petitioner can show the suppressed evidence established a reasonable probability of a different result, but cannot show, by clear and convincing

evidence, that no reasonable juror would have voted to convict the petitioner.

The Appellate Court explicitly stated that it was not deciding whether certain meritorious Brady claims were exempt from the AEDPA's Gatekeeping Provisions, as the defendant's claim lacked merit. Lopez, 577 F.3d at 1066-68; King v. Trujillo, 638 F.3d 726, 729 n.10 (9th Cir. 2011). The Lopez decision discussed considerations weighing against such an exception, including the fact that two Circuits have held that all second-in-time Brady claims are subject to the AEDPA's Gatekeeping Provisions. Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1259-60 (11th Cir. 2009)(rejecting to extend Panetti's reasoning to Brady claims, as such claims are ripe for inclusion in an initial habeas petition); Evans v. Smith, 220 F.3d 306, 323 (4th Cir. 2000).

Contrary to Petitioner's theory, Lopez does not grant a district court authority to hear any second-in-time Brady claim without the appellate court's certification. Fellman v. Davison, 2011 WL 2471579, at *1-3 (N.D. Cal. 2011)(discussing Lopez). The dicta in Lopez merely suggests that it may be appropriate for the appellate court to apply the "reasonable probability" standard, rather than the "clear and convincing standard" in 28 U.S.C. § 2255(h)(1) in determining whether a second-in-time meritorious

14

Brady claims, based on newly disclosed evidence, should be
authorized.

The Court, here, lacks jurisdiction over Petitioner's
Section 2255 Motion, even if Petitioner's interpretation of Lopez
was correct, because Petitioner's Brady claim lacks merit. All
courts agree that such second-in-time Brady claims, which fail to
show materiality, are subject to the AEDPA's Gatekeeping
Provisions, 28 U.S.C. § 2255(h). Lopez, 477 F.ed at 1065;
Crawford v. Minnesota, 698 F.3d 1086, 1089-90 (8th Cir. 2012).

Petitioner's Section 2255 Motion is barred as a successive
petition filed without required certification from the Ninth
Circuit Appellate Court, as non-meritorious Brady claims are
subject to the AEDPA's Gatekeeping Provisions.

Petitioner, in his Reply supporting his Section 2255 Motion,
raises a claim that AEDPA's Gatekeeping Provisions, 28 U.S.C. §
2255(h), unconstitutionally deprive him of his right to present a
meritorious deliberate-fabrication-of-evidence claim. (Reply at
pgs. 22-23, ECF No. 235.)

The Court need not address the constitutionality of the
AEDPA's Gatekeeping Provisions, as Petitioner's claims lack
merit.

### C.   Petitioner's Claims Lack Merit

Petitioner raises four grounds for relief, all based on his allegations that (1) the Court relied on the false representation of a DEA Agent regarding the drug quantity in calculating Petitioner's base offense level and (2) the Government should have disclosed the DEA Agent's alleged history of misconduct.

### 1.   The Proof of the Drug Quantity Did Not Rely on Any Representation by the DEA Agent

On September 7, 1997, the Honolulu Fire Department responded to a fire at Petitioner's residence. The firefighters encountered dense smoke coming from the kitchen stove. One of the stove control knobs was partially melted. The range hood was glowing red and the cabinets surrounding the stove were scorched. The Fire Department was able to extinguish the blaze. (Trial Testimony of Honolulu Fire Department ("HFD") Investigator Edwin Wilson, Tr. 2 at pgs. 70-83.)

During that time, firefighters observed a brown jug labeled "acetone," three cans labeled "denatured alcohol," a paper plate containing a crystalline substance, and paint filters. A cracked Pyrex baking dish containing a burned substance was on the stove. The firefighters realized that the Pyrex dish was on a burner with the control knob in the "on" position. (Trial Testimony of HFD Investigator Wilson, Tr. 2 at pgs. 70-83.)

16

The Fire Department notified the Honolulu Police Department ("HPD") and State Hazardous Material Unit that they suspected the residence served as a drug lab. Police officers who initially entered the residence were overcome by noxious fumes, causing them to withdraw and seek medical treatment. The State Hazardous Materials Unit required protective gear, including air tanks, to investigate the source of the hazardous fumes and fire. (Trial Testimony of HFD Firefighter Alexander K. Beck, Jr., Tr. 2 at pgs. 83-88; Mem. Supp. Section 2255 Motion at pg. 8, ¶ 2, ECF No. 198.)

HPD Evidence Specialist Dean Yamamoto, part of the responding team, recovered various substances including 1588 milliliters of Brown Liquid, which resulted in the drug quantity of 609.5 grams of methamphetamine that Petitioner now disputes. Three days later, on September 10, 1996, a federal search warrant was executed, and other drug-related evidence was seized. All of the drug-related evidence was submitted to HPD, and analyzed by HPD Criminalist Shirley Brown. (Trial Tr. 2 at pgs. 129-31, 144-45, 163-64, Apr. 2, 1997.)

Investigators connected Petitioner to the fire and drug-related evidence through his fingerprints and through an interview of the Rental Agent for the residence. (Criminal Complaint at pg. 3, ECF No. 1.)

17

On September 20, 1996, a Criminal Complaint was filed, charging Petitioner with manufacturing methamphetamine, in violation of 21 U.S.C. § 856(a)(1). (ECF No. 1.) Petitioner initially appeared on the following day.

On October 9, 1996, a four-count Indictment was filed charging Petitioner with: Count 1: Manufacturing methamphetamine, in violation of 21 U.S.C. § 856(a)(1); Count 2: Endangering life by manufacturing a controlled substance, in violation of 21 U.S.C. § 858; Count 3: Possession with intent to distribute 100 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii); and Count 4: Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 13.)

On January 7, 1997, Petitioner filed a Motion to Suppress, claiming that items, including the 1588 milliliters of Brown Liquid, were improperly seized without a warrant. (Attached as Ex. E to the Motion to Suppress, ECF No. 46.) The Report stated that HPD Criminalist Brown evaporated 1588 milliliters of Brown Liquid recovered from Petitioner's residence into 609.5 grams of a crystalline substance. Hearings on the Motion to Suppress were held on January 29, 1997 and March 4, 1997.

On January 29, 1997, a Superseding Indictment was filed, amending Count 3 to charge possession with intent to distribute 100 grams or more of methamphetamine, in violation of 21 U.S.C. §

18

841(b)(1)(A)(viii), instead of 841(b)(1)(B)(viii). (Gov't's Resp. Ex. 1, ECF No. 226.) The amendment increased the mandatory minimum term from five years to ten years.

On February 18, 1997, Petitioner filed a Motion to Dismiss, claiming that the HPD Crime Lab improperly destroyed evidence by evaporating the 1588 milliliters of Brown Liquid, which had revealed a crystalline substance weighing 609.5 grams. Petitioner argued that suppression or dismissal was required, as no report showed the analysis of the liquid or substance.

On March 3, 1997, the Government filed an Opposition. The Opposition stated that a preliminary analysis of the 609.5 grams showed that it contained methamphetamine, but it was awaiting the lab analysis for the purity level. (Opp. At pg. 4, ECF No. 66.)

On March 4, 1997, the Court held a hearing on Petitioner's Motion to Suppress and Motion to Dismiss. HPD Evidence Specialist Dean Yamamoto's testimony established that he recovered the 1588 milliliters of Brown Liquid on September 7, 1996 at Petitioner's apartment. (Tr. at pgs. 22-23, 55, Mar. 4, 1997.) HPD Criminalist Shirley Brown testified that her "color test" of the Brown Liquid indicated the presence of methamphetamine. (Tr. at pgs. 58, 61.) She then evaporated the Brown Liquid and performed an analysis:

AUSA:     And you evaporated [the Brown Liquid] down to six zero nine point five grams?

Brown:    Yes.

19

AUSA:       Whereupon you then conducted your analysis?

Brown:    Yes.

(Tr. at pgs. 57-58, Mar. 4, 1997.) HPD Criminalist Brown

testified that it was standard laboratory procedure to evaporate

the liquid.

On March 28, 1997, the Court issued an Order Denying the

Motion to Suppress and Motion to Dismiss. The Court found that

the evidence was properly seized and the crime lab's evaporation

of the Brown Liquid did not violate Petitioner's constitutional

rights. (ECF No. 86.)

In April 1997, Petitioner went to Trial on the charges in

the Superseding Indictment. The proof of the drug quantity,

including the chain of custody and analysis, was established at

Trial by the testimony of HPD Evidence Specialist Yamamoto, who

recovered it, and HPD Criminalist Brown, who tested it.

HPD Evidence Specialist Dean Yamamoto testified that he

recovered the evidence, including the 1588 milliliters of Brown

Liquid, from Petitioner's home on September 7, 1996. Also present

were three others: HPD Evidence Specialist Diane O'Reilly,

Officer Shigemasa, and HPD Detective Danny Cappo. (Trial Tr. 2 at

pg. 125, 129-31, 144-45, Apr. 2, 1997.) HPD Evidence Specialist

Yamamoto testified at Trial that he submitted all of the evidence

directly to HPD Criminalist Shirley Brown. (Id. at pgs. 131-32.)

HPD Criminalist Brown testified at Petitioner's Trial that, on September 9, 1996, she received evidence from HPD Evidence Specialist Yamamoto, including the 1588 milliliters of Brown Liquid. (Trial Tr. 2 at pgs. 158-59.) She evaporated the 1588 milliliters of Brown Liquid into a substance weighing 609.5 grams, which was introduced as Government Exhibit No. 15:

AUSA:    When you got [Exhibit No. 15] what form was this in?

Brown:   It was a brown liquid.

AUSA:    And what did you do to it prior to weighing it?

Brown:   Well, I took the volume, and then I proceeded to evaporate it down.

AUSA:    To a solid.

Brown:   Yes.

AUSA:    What was the total liquid volume of item 15?

Brown:   That was 1,588 [milliliters].

....

AUSA:    After drying it out what was the weight?

Brown:   The weight was 609.5 grams.

AUSA:    Did you use standard drying process that HPD uses?

Brown:   Yes. I just air evaporated, air dried it.

AUSA:    And what was the purity?

Brown:   That was 85%.

(Trial Tr. 2 at pgs. 163-64, Apr. 2, 1997.)

21

The Trial Testimony established a total drug quantity of 744.364 grams of methamphetamine, of at least 80% purity. The veracity of their Trial Testimony, including the collection and analysis of the 609.5 grams of methamphetamine, was not challenged during cross-examination. (Trial Tr. 2 at pgs. 143-47, 167.) Defense Counsel's Closing Argument similarly did not take issue with the drug quantity. (Tr. 5 at pgs. 22-39, Apr. 8, 1997.)

The Presentence Report's calculation of Petitioner's base offense level relied on the Trial Testimony of HPD Evidence Specialist Yamamoto and HPD Criminalist Brown, in stating that the evidence established Petitioner's accountability for 609.5 grams of methamphetamine. Petitioner did not object at Sentencing to the finding in the Presentence Report with respect to the drug quantity. (Sentencing Hearing Tr. at pgs. 14-15, Dec. 29, 1997.)

At Sentencing, the Court adopted the facts of the Presentence Report in calculating a guideline range of 262 to 327 months. (Sentencing Hearing Tr. at pgs. 14-15, Dec. 29, 1997.) The Court imposed a sentence of 262 months for Count 3, with lesser terms of the remaining three Counts to run concurrently.

Petitioner's Section 2255 Motion alleges that, in October 1996, the DEA Agent falsely inflated the drug quantity by 609.5 grams, in order to coerce Petitioner into cooperating with the

Government. (Mem. Supp. Section 2255 Motion at pgs. 27-31, ¶¶ 38-44, ECF No. 198.)

The record surrounding the recovery of evidence and subsequent drug analysis is contrary to Petitioner's allegation. The DEA Agent at issue had no involvement with the recovery of drugs or drug analysis, and did not testify at Trial regarding the drug-related evidence. The DEA Agent offered minimal testimony at Petitioner's Trial, focusing on the identification of the Petitioner. (Tr. 3 at pgs. 26-42, Apr. 3, 1997.) The DEA Agent's testimony shows that his involvement in the case began on September 10, 1996, a day after the disputed drug quantity was received by HPD Criminalist Brown. (Tr. 3 at pg. 40.) The Court did not rely on any representation by the DEA Agent in determining the drug quantity.

Petitioner, in support of his assertion that the increased drug quantity was based on the DEA Agent's misrepresentation, has attached to various Filings a copy of the Crime Lab Analysis Report, dated September 26, 1996. (Attached to Petitioner's Filing entitled "Summary of Relevant Background," ECF No. 237.) The same Report was part of Petitioner's Pretrial Motion to Suppress. The September 26, 1996 Report does not include the purity level for the 609.5 grams that remained after the 1588 milliliters of Brown Liquid had been evaporated, as the laboratory had not yet completed its analysis.

The purity level for the residue after evaporation of the Brown Liquid was established by HPD Criminalist Brown's testimony at Petitioner's Trial in April 2007. The Report that did not include the purity level of the residue was never introduced at Trial. The preliminary Report had no relevance to the Court's ultimate finding regarding the total drug quantity Petitioner was responsible for. (Trial Tr. 2 at pgs. 160, 163-64, Apr. 2, 1997.)

Petitioner claims that the Government stated, during plea negotiations, that it was willing to exclude the 609.5 grams from Petitioner's drug quantity calculation, if Petitioner agreed to cooperate. (Mem. Supp. Section 2255 Motion at pg. 31, ¶ 44, ECF No. 198.)

A written plea agreement was never reached, and such an offer does not support the inference that the drug quantity was falsely inflated. The Assistant United States Attorney ("AUSA") stated on the record prior to Petitioner's Trial, that Petitioner had been notified that a Superseding Indictment charging a drug quantity that increased the mandatory minimum would be filed, if plea negotiations were unsuccessful. (Tr. at pg. 3, Jan. 29, 1997.)

The increase in the charged drug quantity, reflected in the Superseding Indictment, was ultimately proven at Trial. There is no support within the record for Petitioner's allegations of fabrication of evidence. Nor is there support in the record for

24

Petitioner's claims that the DEA Agent had any role in establishing the drug quantity used to compute Petitioner's sentence.

### 2. Petitioner Fails to Identify Evidence of Misconduct that Required Disclosure

Petitioner alleges a violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). Petitioner claims the Government failed to disclose a history of misconduct and fabrication of evidence by the DEA Agent he accuses of fabricating evidence.

In <u>Brady v. Maryland</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. 83, 87 (1963). Evidence is material when there is a "reasonable probability that, had the [newly discovered] evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

Petitioner relies on <u>Milke v. Ryan</u>, 711 F.3d 998 (9th Cir. 2013), to support his claim that the Ninth Circuit has held that information concerning an officer having a history of repeated misconduct is relevant to evaluating the credibility of the officer when his testimony was material and there is no

25

independent corroborating evidence. (Notice of Supplemental
Authority at pg. 2, ECF No. 222.)

### a.   The DEA Agent's Alleged Later Misconduct is Irrelevant to Petitioner's Case

Petitioner fails to point to relevant instances of
misconduct that the Government should have disclosed in
connection with Petitioner's case.

The DEA Agent's alleged misconduct between 2006 and 2008
formed the basis for the <u>Brady</u> violation in <u>Ferreira</u>, No. 07-
00608, 2011 WL 6012515 (D. Haw. Nov. 30, 2011). (Petitioner's
Decl. in Support of his Section 2255 Motion, Ex. 3, ECF No. 199.)
The DEA Agent's alleged misconduct occurred at least ten years
after Petitioner's case.

Petitioner attempts to add allegations of earlier misconduct
to the allegations in <u>Ferreira</u> in order to establish a history of
misconduct that could then be seen as relevant to his case.
Petitioner points to an accusation of misconduct concerning two
incidents in 1998. (Petitioner's Decl. in Support of his Section
2255 Motion, Ex. 1, ECF No. 199.) The Court in <u>Ferreira</u> ruled,
prior to trial, that the alleged misconduct in 1998 did not
reflect on the DEA Agent's honesty and integrity. <u>Ferreira</u>, 2-11
WL 6012515, at *3. The issue of the alleged 1998 misconduct was
also raised in the case of <u>United States v. Kimball</u>, Cr. No. 00-
00105. At the Sentencing Hearing, on July 17, 2003, the Court

26

found the allegations irrelevant to the DEA Agent's integrity in the <u>Kimball</u> case. (Government's Opp. Ex. 4, Sentencing Hearing Tr. at pg. 37, ECF No. 226.)

Petitioner also alleges that the DEA Agent engaged in misconduct in the <u>Kimball</u> case, Cr No. 00-00105, by misrepresenting evidence in his Grand Jury Testimony. Petitioner points to the fact that the DEA Agent testified before the Grand Jury that he observed Kimball engage in a drug transaction, but later clarified, at the Sentencing Hearing, on July 17, 2003, that he was informed of the transaction by a cooperating informant. (Petitioner's Decl. Supp. Section 2255 Motion, Exs. 2-3, ECF No. 199; Decl. of Allen Kimball, ECF Nos. 208 and 209; Reply at pgs. 25-26, ECF No. 235.)

At the time the DEA Agent testified before the Grand Jury in the <u>Kimball</u> case, it was early in the investigation and the DEA Agent had an actual basis for the statements. (Gov't's Resp. Ex. 5, <u>Kimball</u> Hearing on Motion for Downward Departure Tr. at pgs. 9, 15, 18, Jul. 23, 2003, ECF No. 229.) The DEA Agent's further investigation revealed that his Grand Jury testimony turned out to be mistaken. The evidence from the <u>Kimball</u> case does not establish the DEA Agent's intention to deceive, nor would such evidence establish a viable <u>Brady</u> claim for Petitioner Robinson.

### b.   The DEA Agent's Testimony was Immaterial

Petitioner also fails to demonstrate the materiality of the DEA Agent's statements, as required to establish a <u>Brady</u> violation.

In <u>Ferreira</u>, the Court granted a new trial for failure to disclose the DEA Agent's alleged misconduct, as the DEA Agent's credibility was "central to the prosecution's case." In <u>Ferreira</u>, the DEA Agent's testimony provided the only corroboration to testimony which led to the defendant's conviction. The DEA Agent was also responsible for misplacing evidence in the <u>Ferreira</u> case. 2011 U.S. Dist LEXIS 138031, at *21-22.

The DEA Agent's credibility was not central to Petitioner Robinson's case, as opposed to the circumstance of <u>Ferreira</u>. The drug quantity was based upon the testimony of HPD Evidence Specialist Yamamoto and HPD Criminalist Brown. Although the DEA Agent did testify at Petitioner's Trial, his testimony was confined to evidence supporting the identification of Petitioner. Petitioner's identification was corroborated by other evidence. (Trial Tr. 3 at pgs. 36-42, Apr. 3, 1997.)

The record does not support Petitioner's allegation that he received an increased sentence due to the DEA Agent's false representation. Petitioner has failed to assert a meritorious claim based on the DEA Agent's alleged misconduct or the

28

Government's alleged failure to disclose any allegations of the DEA Agent's misconduct.

### D.   Petitioner's Motion for Leave to Conduct Discovery

Petitioner filed a Motion for Leave to Conduct Discovery. (ECF No. 213.)

A habeas petitioner, unlike other civil litigants, is not automatically entitled to discovery. Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing 28 U.S.C. § 2255 Proceedings provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with practices and principles of law." Good cause exists when there is "reason to believe that a petitioner may be able to demonstrate that he is entitled to relief, if the facts are fully developed. Bracy, 520 U.S. at 908-09.

Petitioner has not presented any evidence to support a meritorious claim that would allow for an exemption from certification, even if such an exemption existed. Petitioner's claims are based on the DEA Agent's alleged misconduct and the Government's failure to disclose the DEA Agent's history of misconduct. The DEA Agent's testimony in Petitioner's case was not material to the issues that Petitioner claims were wrongfully

decided. Petitioner also fails to point to any misconduct by the DEA Agent that should have been revealed to Petitioner.

Petitioner's Motion for Leave to Conduct Discovery (ECF No. 213) is **DENIED.**


  **E.** **Petitioner's Motion to Compel the Government to Produce Information Establishing the Drug Quantity and Request for an Evidentiary Hearing and Petitioner's Motion to Compel Government to Correct Record**

Petitioner filed a Motion to Compel Compliance with the Government's Duty of Candor and Request for Evidentiary Hearing (ECF No. 243) and a Motion to Compel the Government to Correct the Record (ECF No. 246). Petitioner requests an order compelling the Government to produce evidence substantiating the DEA Agent's allegedly false representation regarding the drug quantity. Petitioner also requests that the drug quantity calculation in the Presentence Report be amended, as he alleges that it is based on the DEA Agent's misrepresentation.

The record directly contradicts Petitioner's theory that the drug quantity in the Presentence Report was based upon any representation by the DEA Agent. The record shows that the drug quantity was based on the testimony of HPD Evidence Specialist Yamamoto and the drug analysis performed by HPD Criminalist Brown. The Government is not required to produce evidence, as requested by Petitioner. An amendment to the drug quantity in the Presentence Report is not warranted.

An evidentiary hearing in a Section 2255 action is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

An evidentiary hearing is not required if a prisoner's allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003)(citing United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)).

The Court lacks jurisdiction over Petitioner's Section 2255 Motion, as it is a successive petition filed without the required certification from the Ninth Circuit Court of Appeals. The record also conclusively shows that Petitioner's Brady claim lacks merit. Petitioner is not entitled to an evidentiary hearing.

Petitioner's Motion to Compel Compliance with the Government's Duty of Candor and Request for Evidentiary Hearing (ECF No. 243) is **DENIED.**

Petitioner's Motion to Compel Government to Correct Record (ECF No. 246) is **DENIED.**

**F.  Petitioner is Not Entitled to Appointed Counsel**

Petitioner claims that the he should be appointed counsel, due to the legal issues surrounding the filing of a second-in-time Section 2255 Motion without certification. (ECF No. 242.)

The right to counsel guaranteed by the Sixth Amendment of the United States Constitution does not apply in state or federal prisoners' habeas corpus actions. McCleskey v. Zant, 499 U.S. 467, 495 (1991).

A district court is authorized to appoint counsel in a Section 2255 proceeding, pursuant to 18 U.S.C. § 3006A, when (1) the petitioner is financially eligible for appointment of counsel and (2) "the court determines that the interests of justice so require." 18 U.S.C § 3006A(a)(2)(B). The court's determination focuses on the prisoner's ability to articulate his claims in light of the complexity of the legal issues and likelihood of success on the merits of the petition. Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). When a court determines that an evidentiary hearing will be necessary on a Section 2255 motion, the court must appoint counsel for a financially eligible petitioner. United States v. Duarte-Higareda, 68 F.3d 369, 370 (9th Cir. 1995)(citing Rule 8(c) of the Federal Rules Governing Section 2255 Proceedings).

Petitioner's claims are procedurally barred and lacking in merit, and do not require an evidentiary hearing. Appointment of counsel for Petitioner is not appropriate.

Petitioner's Motion for Appointment of Counsel (ECF No. 242) is **DENIED.**


Defendant/Petitioner Scott Robinson's Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255, (ECF NO. 406) is **DENIED.**


## II.  PETITIONER IS NOT ENTITLED TO A CERTIFICATE OF APPEALABILITY


The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2). A "substantial" showing requires a prisoner to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)(quoting Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983)). When a habeas petition is denied on procedural grounds, without reaching the merits of the underlying

constitutional claim, a prisoner seeking a Certificate of Appealability must show, at least, "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Petitioner's Section 2255 Motion was filed without the required certification from the Ninth Circuit Appellate Court and lacks merit. Petitioner does not make a substantial showing that he was deprived of a constitutional right, and there is no reason to encourage further proceedings.

Petitioner is not entitled to a Certificate of Appealability.

<u>CONCLUSION</u>

Defendant/Petitioner Scott Robinson's Request for Liberal Construction (ECF No. 238) is **GRANTED**.

Petitioner's Motion for Leave to Conduct Discovery (ECF No. 213) is **DENIED.**

Petitioner's Motion to Compel Compliance with Government's Duty of Candor and Request for Evidentiary Hearing (ECF No. 243) is **DENIED.**

34

Petitioner's Motion to Compel Government to Correct Record (ECF No. 246) is **DENIED.**

Petitioner's Motion for Appointment of Counsel (ECF No. 242) is **DENIED.**

Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF NO. 184) is **DENIED.**

Petitioner is not entitled to a Certificate of Appealability.

IT IS SO ORDERED.

DATED: October 31, 2013, Honolulu, Hawaii.



/S/ Helen Gillmor

_____

Helen Gillmor
United States District Judge


United States of America v. Scott Robinson; Crim. No. 96-01018HG-01; Civ. No. 12-00627HG-KSC; **ORDER GRANTING PETITIONER'S REQUEST FOR LIBERAL CONSTRUCTION (ECF NO. 238) AND DENYING PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY (ECF NO. 213) AND DENYING PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH GOVERNMENT'S DUTY OF CANDOR AND REQUEST FOR EVIDENTIARY HEARING (ECF NO. 243) AND DENYING PETITIONER'S MOTION TO COMPEL GOVERNMENT TO CORRECT RECORD (ECF NO. 246) AND DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL (ECF NO. 242) AND DENYING PETITIONER SCOTT ROBINSON'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF NO. 184).**